**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KIRK BURROWES,                                    :     No. 25-cv-7795 (MKV) (SDA)
                                                  :
               Plaintiff,         :     **ORAL ARGUMENT REQUESTED**
                                                  :
         v.                              :
                                                  :
SEAN COMBS,                                       :
                                                  :
              Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT, OR, ALTERNATIVELY, TO STAY
THE ACTION, OR TO STRIKE SCANDALOUS AND IRRELEVANT MATERIAL**

JONATHAN D. DAVIS, P.C.
1 Rockefeller Plaza
Suite 1712
New York, New York 10020
(212) 687-5464

*Attorneys for Defendant Sean Combs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

THE COMPLAINT ........................................................................................................... 5

THE APPLICABLE LEGAL STANDARDS ..................................................................... 6

ARGUMENT.................................................................................................................... 7

POINT I:  PLAINTIFF'S CLAIM IS
INADEQUATELY PLEADED AND TIME-BARRED ....................................7

A. Only One Non-Actionable Incident Allegedly Occurred in NYC.............. 7

B. The Single GMV Claim Is Nevertheless Time-Barred............................. 10

C. A Split of Authority Exists in this
District Whether the ASA Preempts the GMV ........................................ 13

POINT II:  THE COMPLAINT ALLEGES IMMATERIAL, SCANDALOUS,
AND PREJUDICIAL MATERIAL THAT MUST BE STRUCK .................15

CONCLUSION............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Jenkins*,
2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005) ................................................................... 10

*Alaimo v. Gen. Motors Corp.*,
2008 WL 4695026 (S.D.N.Y. Oct. 20, 2008) ......................................................................... 16

*Albany Area Builders Ass'n v. Town of Guilderland*,
74 N.Y.2d 372 (1989) ............................................................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................... 6

*Bray v. Purple Eagle Ent., Inc.*,
2019 WL 1549044 (S.D.N.Y. Jan. 18, 2019) .................................................................... 15, 16

*Bray v. Purple Eagle Ent., Inc.*,
2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) ............................................................................. 7

*Breest v. Haggis*,
180 A.D.3d 83 (1st Dep't 2019) .............................................................................................. 10

*Burrowes v. Combs*,
124 Fed. App'x 70 (2d Cir. 2005) ........................................................................................... 16

*Burrowes v. Combs*,
25 A.D.3d 370 (1st Dept. 2006) .............................................................................................. 16

*Burrowes v. Combs*,
312 F. Supp. 2d 449 (S.D.N.Y. 2004) ..................................................................................... 15

*Consol. Edison Co. of N.Y. v. Town of Red Hook*,
60 N.Y.2d 99 (1983). ............................................................................................................... 12

*Doe v. Alexander*,
2025 WL 1384786 (S.D.N.Y. Apr. 25, 2025) ......................................................................... 14

*Doe v. Black*,
2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................................................................ 13

*Doe v. Combs*,
 2025 WL 1425751 (S.D.N.Y. May 16, 2025).......................................................................... 14

*Doe v. Daddy's House Recordings Inc.*,
 2025 WL 1425732 (S.D.N.Y. May 16, 2025).......................................................................... 14

*Doe v. Rees*,
 2025 WL 834786 (N.D.N.Y. Mar. 17, 2025)............................................................................ 8

*Doe v. Telemundo Network Grp. LLC*,
 2023 WL 6259390 (S.D.N.Y. Sept. 26, 2023).......................................................................... 8

*Donahue v. Asia TV USA Ltd.*,
 208 F. Supp. 3d 505 (S.D.N.Y. 2016).............................................................................. 15, 16

*Dutton v. Glass*,
 2005 WL 146503 (S.D.N.Y. Jan. 20, 2005)............................................................................. 7

*Giunta v. Dingman*,
 893 F.3d 73 (2d Cir. 2018).................................................................................................... 6

*In re Smith Barney Transfer Agent Litig.*,
 765 F. Supp. 2d 391 (S.D.N.Y. 2011).................................................................................... 8

*La Pietra v. RREEF Am., L.L.C.*,
 738 F. Supp. 2d 432 (S.D.N.Y. 2010).................................................................................... 6

*Louis v. Niederhoffer*,
 2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023)......................................................................... 10

*Parker v. Alexander*,
 779 F. Supp. 3d 361 (S.D.N.Y. 2025)................................................................................... 14

*Prout v. Vladeck*,
 326 F.R.D. 407 (S.D.N.Y. 2018)..................................................................................... 15, 16

*Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*,
 35 N.Y.3d 332 (2020) ........................................................................................................ 13

*Rivers v. Combs*,
 2025 WL 2414117 (S.D.N.Y. August 19, 2025)............................................................. 9, 11, 14

*Rossbach v. Montefiore Med. Ctr.*,
 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ........................................................................... 10

**Statutes**

N.Y. C.P.L.R. § 214-g ............................................................................................... *passim*

N.Y. C.P.L.R. § 214-j ................................................................................................ *passim*

N.Y.C. Admin. Code § 10-1105 ................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. *passim*

Fed. R. Civ. P. 12(f) ...................................................................................................... 15

This memorandum of law is respectfully submitted on behalf of Defendant Sean Combs in support of this motion for an order pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the Complaint (ECF No. 1) (the "Motion to Dismiss")[1], or, alternatively, under this Court's inherent powers staying this Action pending a ruling by the U.S. Court of Appeals for the Second Circuit, which is currently considering a consolidated appeal presenting the issue of whether the two-year claims-revival amendment to the New York City Gender Motivated Violence Act (the "GMV") is preempted by the New York Adult Survivors Act (the "ASA").[2]

Further, to the extent any claim remains if the Action is not dismissed in its entirety or, at a minimum, stayed, Defendant moves under Fed. R. Civ. P. 12(f) to strike all immaterial and scandalous allegations from the Complaint, including paragraphs 24, 30, 38–49, and 65–145.

## **PRELIMINARY STATEMENT**

Plaintiff Kirk Burrowes claims that thirty years ago he was forced out of Bad Boy Entertainment, Inc. ("BBE"), a company that he purportedly co-founded in 1992 with Defendant's mother, Janice Smalls, who is now an eighty-five-year-old grandmother.[3] Plaintiff recently sued Ms. Smalls in this district over her alleged ownership of BBE. However, Ms. Smalls never was a shareholder of BBE. What that corporate history and the other irrelevant matters alleged in the Complaint have to do with Plaintiff's time-barred purported sexual assault claim is anyone's guess.

---

[1] The Motion to Dismiss is accompanied by the Declaration of Jonathan D. Davis, dated November 19, 2025. On September 19, 2025, Defendant removed this action to this Court from the Supreme Court of the State of New York, County of New York. A copy of the Notice of Removal, which attaches the Complaint, dated February 28, 2025, is attached thereto as Exhibit A.

[2] *See* New York City Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code §§ 10-1104 and 10-1105(a); Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

[3] BBE amended its name in 2014 from BBE to Bad Boy Entertainment Holdings, Inc., as verified on https://apps.dos.ny.gov/publicInquiry/ by searching "Bad Boy Entertainment."

Now, in this action, Plaintiff contradictorily asserts that he co-founded BBE with *Defendant*, and not *Ms. Smalls*, as he has previously contended. This glaring factual inconsistency is unsurprising because Plaintiff has never kept his story straight in his fruitless, decades-long quest for a financial recovery against Defendant. His allegations now and before are patently false and driven by jealousy and loathing for Defendant.

This action is Plaintiff's fourth attempt to dredge up make-believe claims about his purported ownership in (and at-will employment at) BBE, which interest he claims was forcibly taken from him in a bat-wielding confrontation in 1995. His lawsuits in the early 2000s were so devoid of merit they were dismissed at the pleading stage. The multiple court rulings in those cases determined that Plaintiff's claims about his purported ouster from BBE were time-barred and not actionable.

Plaintiff and his lawyer now falsely attempt to allege a timely sexual assault claim against Defendant based on the GMV's 2022 claims-revival amendment. Like all of Plaintiff's prior failed lawsuits, this one is entirely contrived and frivolous, as it was sparked by Defendant's indictment last year for federal sex trafficking and racketeering in the Southern District of New York. But that prosecution failed in its case against Defendant, resulting in his acquittal over the summer of the most serious crimes, with the government achieving two convictions under the Mann Act for prostitution, which will be appealed.

Plaintiff's lawyer was connected to Defendant's criminal prosecution through his other clients, who were witnesses in that case. He presently represents multiple persons who have sued Defendant and others for a myriad of alleged sexual misconduct and intentional torts. *See, e.g.*, *Jones v. Combs*, Case No. 24-cv-1457 (JPO) (S.D.N.Y.); *Gardner v. Combs*, Case No. 24-cv-7729 (LMG) (JRA) (D.N.J.); *Lampros v. Combs*, Case No. 154859/2024 (Sup. Ct., N.Y. Cnty.);

2

*O'Marcaigh v. Combs*, Case No. 25-cv-3650-DMG (C.D. Cal.); *Bongolan v. Combs*, Case No. 24SMCV05819 (Cal. Super. Ct.); *Laurent v. Combs*, Case No. 25-cv-9495 (C.D. Cal.); *Burrowes v. Smalls*, Case No. 25-cv-1618 (JHR) (S.D.N.Y.).

The Complaint purports to allege a series of "crimes of violence" in violation of the GMV. However, the GMV precludes all but one of the purported instances of misconduct alleged in the Complaint. That statute applies only to conduct occurring *after* its enactment in 2000. With two exceptions, the misconduct alleged in the Complaint allegedly occurred prior to 2000 and is outside the scope of the GMV. Furthermore, the GMV concerns only events occurring *in New York City*. One of the two alleged instances of misconduct post-dating the enactment of the GMV in 2000 purportedly occurred in Los Angeles, California, and therefore is non-actionable.

The remaining instance of alleged misconduct occurring after the GMV's enactment purportedly took place in New York City after 2000, but also is non-actionable. The Complaint alleges that in 2013 or 2014, Defendant purportedly bear hugged Plaintiff on a public street in New York City. But this alleged act is not sustainable under the GMV because it is not alleged to involve Plaintiff's gender or animus towards his male gender. Moreover, this alleged act is presumptively time-barred under the seven-year limitations period under the GMV. N.Y.C. Admin. Code § 10-1105.

In arguing that his claim is timely filed, Plaintiff relies on a recent amendment to the GMV establishing a "claim-revival" provision that allowed litigants to file claims that would otherwise be time-barred provided they sued by *February 28, 2025*, *the day Plaintiff filed this action*. However, the GMV's claim-revival provision is preempted by the ASA, which precludes Plaintiff from suing under the GMV. On May 24, 2022, the New York State Legislature (the "State Legislature") enacted legislation allowing litigants to revive claims that would otherwise be

3

time-barred under the ASA. The ASA, like the GMV, covers claims arising from "sexual offenses" under the New York Penal Law. The ASA was amended to provide a revival window of one year, but it expired on *November 24, 2023*.

The ASA—together with the New York Child Victims Act ("CVA"), which applies to children under the age of eighteen—represents a comprehensive and detailed regulatory scheme concerning the revival of time-barred claims for sexual offenses. The ASA's one-year revival window reflects the State Legislature's deliberate balancing of interests and its intent for the state law to occupy the entire legislative field for revival of time-barred sexual misconduct claims.

The New York City Council (the "City Council") lacked authority to further extend the claims-revival period for sexual misconduct claims beyond the deadline enacted by the State Legislature. If the City Council had such authority, then it would undermine the State's legislative action. A split of authority exists in this Southern District of New York on whether the ASA and CVA preempt the GMV's claims-revival window, which is pending before the Second Circuit.

If the Court prefers to avoid ruling on this split of authority, Defendant respectfully requests that this action be stayed pending a decision from the Second Circuit, which is the path multiple courts have elected to follow. However, absent the granting of a stay, Plaintiff's expired GMV claim should be dismissed with prejudice.

If the Court sustains the Complaint in any respect, then it should strike all immaterial, scandalous, and prejudicial allegations therein, which falsely accuse Defendant of heinous acts over the last three decades. None of Plaintiff's repugnant allegations have any merit or place in this action. Moreover, Plaintiff admittedly lacks personal knowledge of the irrelevant alleged events, which were included for no other purpose than to disparage, prejudice, and harm Defendant. None of these allegations have any probative value to the resolution of any claim.

4

**THE COMPLAINT**

The Complaint is laden with vague allegations regarding sexual assaults purportedly committed by Defendant against Plaintiff. It is replete with sweeping words and phrases, such as "sexual abuse, coercion, violence, and intimidation," "forced coercion," "violence, threats, and coercion," and "acts of sexual assault, coercion, intimidation, and harassment," mostly without reference to specific names, dates, places, and/or events. Compl. *passim*.

Despite its 31-page length, the Complaint alleges only the following specific instances of purported sexual misconduct, but in the barest detail:

- "During a business trip in 1995, Combs arranged a meeting at his hotel suite, but upon Plaintiff's arrival, Combs was nude and demanded that Plaintiff watch as he masturbated." *Id.* ¶ 31.

- "In late 1995, at Combs' Midtown apartment, Combs physically restrained Plaintiff, preventing him from leaving by removing his keys, pinning him down onto a bed, and simulating intercourse until he ejaculated." *Id.* ¶ 32.

The remainder of the Complaint is comprised of the following allegations of generalized misconduct:

- "Combs regularly forced Plaintiff into situations where he was made to witness Combs engaging in sexual acts with employees, interns, prospective artists, and third parties at the Bad Boy Entertainment office, reinforcing his control through humiliation and intimidation." *Id*. ¶ 25.

- "On multiple occasions, Combs summoned Plaintiff through the company intercom system under false pretenses, only for Plaintiff to walk in on Combs receiving oral sex or engaging in other lewd acts." *Id.* ¶ 26.

- "Combs frequently made inappropriate and sexually suggestive remarks about Plaintiff's body, implying that compliance with his advances would secure career benefits." *Id.* ¶ 28.

- "Plaintiff was coerced into staying in rooms while Combs engaged in sexual activities, with Combs insisting that such exposure was

5

part of the 'culture' of the entertainment industry and a requirement for success." *Id.* ¶ 29.

- "In the office, Combs frequently grabbed Plaintiff inappropriately (his penis and anus) and would corner him in confined spaces while making sexually explicit comments about what he 'expected' from Plaintiff." *Id.* ¶ 34.

- "Sean Combs requested that Plaintiff give him hand jobs, blow jobs, and to use objects on him anally." *Id.* ¶ 37.

The alleged misconduct occurred sometime between 1992 and 1996. Plaintiff further alleges that on two occasions, one "[i]n or around 2013-2014" and the other in "2019," Defendant gave him a "bear hug." *Id.* ¶¶ 54, 58. The 2019 incident allegedly occurred in California, although Plaintiff fails to mention any location in his pleading.

## THE APPLICABLE LEGAL STANDARDS

The Complaint should be dismissed because of the expiration of the applicable statute of limitations. The sole claim asserted therein is plainly time-barred.

To survive a Rule 12(b)(6) motion, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And, subject to limitations, a district court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiffs' favor." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). Dismissal is warranted if the complaint fails to state a plausible claim, despite accepting all allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While a complaint need not provide "detailed factual allegations," it must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555; *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 436 (S.D.N.Y. 2010) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" (quoting *Iqbal*, 556 U.S. at 678)). Additionally,

6

when "the dates in the complaint reveal that the action is barred by the statute of limitations, defendants may move to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted." *Dutton v. Glass*, 2005 WL 146503, at *1 (S.D.N.Y. Jan. 20, 2005) (dismissing claims as time-barred under Fed. R. Civ. P. 12(b)(6)).

But even a well-pleaded complaint cannot allege irrelevant, prejudicial, or scandalous matter. Thus, if the Complaint is not dismissed in its entirety, then Defendant moves to strike such allegations from the Complaint under Fed. R. Civ. P. 12(f). "Under that rule, allegations may be stricken where they have no bearing on the parties' claims or defenses, will likely be prejudicial, or where they have criminal overtones. Arguably relevant material may be stricken where it might prejudice the moving party. Accordingly … courts in this district have stricken various categories of allegations based on their irrelevance and prejudicial effect." *Bray v. Purple Eagle Ent., Inc.*, 2019 WL 549137, at *3 (S.D.N.Y. Feb. 12, 2019) (cleaned up).

## ARGUMENT

## POINT I

## PLAINTIFF'S CLAIM IS INADEQUATELY PLEADED AND TIME-BARRED

### A.  Only One Non-Actionable Incident Allegedly Occurred in NYC

Plaintiff has alleged two incidents underlying his GMV claim. The first alleged incident purportedly occurred in 2019 and is titled "2019: **Physical Assault and Sexual Groping**." But this alleged event cannot underlie a GMV claim because it did not occur in New York City:

> **2019: Physical Assault and Sexual Groping**
>
> 56. In 2019, Plaintiff had the misfortune of encountering Defendant Combs and his "mother," Janice Smalls, at a birthday celebration for singer Diana Ross.
>
> 57. Plaintiff was invited to the party by a friend who is a midlevel executive at Universal Music Group.

58. Upon seeing Plaintiff, Combs aggressively grabbed him, forcefully restraining him in the same fake bearhug that he did years prior.

59. As was the case in the 1990s and early 2000s, Combs seized the opportunity to degrade Plaintiff by grabbing him close, slapping him on his rear end, and daring Plaintiff to do something about it.

60. Combs then proceeded to grope Plaintiff in an overt attempt to assert dominance over him, humiliating Plaintiff in the presence of others.

61. Upon information and belief, Combs engaged in this behavior as a continuation of his long-standing pattern of control and intimidation, using physical and sexual aggression to remind Plaintiff of his power.

62. Combs committed multiple crimes of violence motivated by gender, including sexual assault, forcible touching, and coercion.

63. Combs subjected Plaintiff to sexual violence due to his gender, using intimidation and threats to establish dominance.

Even assuming this incident occurred, and the "bear hug" constituted "a crime of violence," it allegedly occurred in California.[4] Because a GMV claim arises under the New York City Code, it "applies only to acts occurring within the boundaries of New York City." *Doe v. Rees*, 2025 WL 834786, at *8 (N.D.N.Y. Mar. 17, 2025); *see also Doe v. Telemundo Network Grp. LLC*, 2023 WL 6259390, at *12 (S.D.N.Y. Sept. 26, 2023) (dismissing GMV claim because complaint without allegation connecting claim to New York City). Accordingly, this alleged incident cannot underlie a viable GMV claim.

The other incident alleged in the Complaint concerns a supposed "bear hug" committed by Defendant that allegedly occurred on a public street in New York City years ago:

---

[4] A court may … take judicial notice of news articles discussing the conduct raised in the complaint." *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y. 2011). *See https://www.vanityfair.com/style/2019/03/diana-ross-75th-birthday-party?srsltid=AfmBOopy7rsqg2RsJZqZp6iDE6DA1Rhpkw4ykH9G0jPJfUw6nzWitCog; https://www.youtube.com/watch?v=3N2eAtUSVso.*

**2013-2014: Confrontation and Threats in Midtown Manhattan**

50. In or around 2013-2014, Plaintiff, who was living in a welfare hotel in Midtown Manhattan, unexpectedly encountered Defendant Combs near his NYC residence.

51. The Plaintiff, attempting to get food from a nearby McDonald's, crossed paths with Combs and his security entourage as they exited a vehicle near their private entrance.

52. Upon seeing Plaintiff, Combs' security detail surrounded him, blocking his movement.

53. Paul Offord (aka Uncle Paulie), a known associate of Combs, explicitly threatened the Plaintiff, stating that when Combs was tired of seeing the Plaintiff alive, Offord's face would be the last face the Plaintiff would see.

54. Thinking this was hilarious, Combs proceeded to touch Plaintiff without Plaintiff's consent. He pulled Plaintiff close to his body to simulate giving him a bear hug. In doing so, he aggressively grabbed the Plaintiff's buttocks and violently shoved him off.

55. Upon information and belief, Combs orchestrated this encounter as an intimidation tactic to reinforce his continued dominance and control over Plaintiff's ability to exist within the music industry and public sphere.

Although this incident allegedly occurred in "Midtown Manhattan," it does not constitute an actionable offense under the GMV. To allege a GMV claim, Plaintiff must plead that: (1) Defendant engaged in conduct constituting a crime of violence as defined by the GMV; (2) Defendant engaged in the alleged conduct because of gender; (3) Defendant engaged in the alleged conduct in part because of animus against a person's gender; and (4) injury resulted therefrom. *Rivers v. Combs*, 2025 WL 2414117, at *9 (S.D.N.Y. Aug. 19, 2025).

Based on the allegations actually pled, this purported "bear hug" is potentially, at most, a "confrontation and threat." The Complaint is devoid of any allegation that it constituted a sexual

9

assault, on the one hand, or that it was in any way motivated by Plaintiff's "gender" or "animus against" Plaintiff's gender, on the other hand. Indeed, the Complaint specifically alleges that "Combs orchestrated this encounter as an intimidation tactic to reinforce his continued dominance and control over Plaintiff's ability *to exist within the music industry and public sphere.*"[5] Compl. ¶ 55. By Plaintiff's own words, it had nothing to do with sex or his gender. And, finally, Plaintiff has not alleged any discernible injury from the alleged encounter.

The 2013–2014 incident is insufficient to plead a viable GMV claim, which should therefore be dismissed.

### B. The Single GMV Claim Is Nevertheless Time-Barred

With the exception of the two "bear hug" incidents described above, all of the purported misconduct alleged in the Complaint occurred before 2000 (*see* Compl. ¶¶ 24–37) and thus is not actionable under the GMV because that is the year the statute was enacted and the law does not apply to pre-enactment misconduct. *See Adams v. Jenkins*, 2005 WL 6584554, at *3 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) (dismissing GMV claim "with respect to incidents alleged to have occurred prior to enactment" of the GMV); *Louis v. Niederhoffer*, 2023 WL 8777015, at *1–2 (S.D.N.Y. Dec. 19, 2023) (same). And the only post-enactment incident alleged to have occurred in New York City, the 2013–2014 so-called "bear hug" incident (Compl. ¶¶ 50–55), is time-barred. This claim would only be timely if asserted within the GMV's claim-revival window, but the ASA preempts the GMV, and its claim-revival window closed in 2023.

In 2022, the State Legislature amended the ASA, reviving time-barred claims tied to

---

[5] "Generally, the animus element requires the plaintiff to present extrinsic evidence of the defendant's expressed hatred toward women as a group or allege specific actions and statements by the perpetrator during the commission of the alleged crime of violence." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 930710, at *10 (S.D.N.Y. Mar. 11, 2021) (quotation omitted). Nothing on that order is alleged here.

10

"sexual offenses" under the New York Penal Law.[6] To effectuate this legislative goal, the ASA

was amended by N.Y. C.P.L.R. § 214-j, which created a one-year claim-revival window:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary … every civil claim or cause of action brought against any party alleging … conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law … which is barred as of the effective date of this section because the applicable period of limitation has expired … *is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.*

N.Y. C.P.L.R. § 214-j (emphasis added). The claim-revival window closed on *November 24, 2023*.

*Rivers*, 2025 WL 2414117, at *8. Plaintiff's claim was not commenced until *February 28, 2025*,

more than a year after the ASA bar date.

Plaintiff cannot escape the consequences of failing to timely file his claim within the ASA's

claim-revival window by swapping it now with the GMV, assuming for argument's sake he could

allege a "crime of violence" taking place in New York City. On January 24, 2022, the City Council

enacted the GMV's claim-revival provision, Section 10-1105, which parrots the ASA's claim-

revival provision:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

N.Y.C. Admin. Code § 10-1105. Under this provision, a GMV claim that was time-barred could

be filed up until *February 28, 2025*. However, this provision is preempted by the ASA, and cannot

be employed to revive time-barred ASA claims. Plaintiff cannot pursue this GMV claim.

---

[6] In 2019, the State Legislature enacted the CVA, which created a similar claim-revival window that expired in August 2021 for persons to allege time-barred sexual misconduct claims that occurred when they were under the age of eighteen. *See* N.Y. C.P.L.R. § 214-g.

A state law may preempt a local law either expressly or impliedly. *Consol. Edison Co. of N.Y. v. Town of Red Hook,* 60 N.Y.2d 99, 105 (1983). In cases of implied field preemption of a statute, as here, where the State Legislature "enacted a comprehensive and detailed regulatory scheme in a particular area," a local government, like the City Council, "lacks authority to deal with the matter unless it is specifically empowered so to do in terms clear and explicit." *Id.* at 106–07 (citation and quotation omitted); *see also Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (1989) ("Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute.").

The ASA and CVA together establish a comprehensive and detailed regulatory scheme concerning the revival of claims based on a "sexual offense" committed against adults and children. The plain language of each statute manifests this intention. The one-year claim-revival provisions enacted under the ASA and CVA cover *all claims and causes of action* for sexual misconduct tied to an offense under the N.Y. Penal Law, §§ 130, *et seq*. *See* N.Y. C.P.L.R. §§ 214-g, 214-j (applying to "*every civil claim or cause of action* brought against any party alleging intentional or negligent act or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law …." (emphasis added)).

Further, the ASA and the CVA specify that they apply "[n]otwithstanding any provision of law which imposes a period of limitation *to the contrary*." *Id.* (emphasis added). The GMV's claim-revival provision is "contrary" to that clause because it creates an independent claim-revival window for claims based on commission of a "sexual offense." But the ASA and CVA dictate that the actions they revive "may be commenced … *not later than*" the date when their revival windows

12

expire. *Id.* (emphasis added). Thus, the GMV negates this provision by permitting the filing of claims *after* the expiration of the deadlines legislated in the ASA and CVA. Therefore, the GMV's claim-revival provision is incompatible with the ASA and CVA and is barred under the preemption doctrine.

To allow the GMV to override the one-year claim-revival windows created under the ASA and CVA would frustrate the policy judgments of the State Legislature. As the Court of Appeals has held, "*[r]evival is an extreme exercise of legislative power*…. Uncertainties are resolved against consequences so drastic." *Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371 (2020) (quotation omitted). To balance this extreme exercise of legislative power and its "upsetting [of] the strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations," the State Legislature provides only "a limited window when stale claims may be pursued." *Id.* at 371–72.

The City Council cannot frustrate the State Legislature's statutory scheme by creating a separate, inconsistent, claim-revival window for the same category of claims. Accordingly, Plaintiff cannot rely on the GMV to resuscitate his expired alleged claim of sexual misconduct or violence. It should be dismissed.

### C. A Split of Authority Exists in this District Whether the ASA Preempts the GMV

Although prior preemption authorities establish that the ASA supersedes the GMV based on field preemption, a split of authority exists in the Southern District of New York concerning this issue. In *Doe v. Black*, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024), Judge Clarke held that the GMV's claim-revival provision was not preempted by the ASA and CVA. On November 8, 2024, the court certified its decision for interlocutory appeal, No. 23-cv-6418, ECF No. 153, which is now pending before the Second Circuit. *Doe v. Black*, No. 25-564.

Four months after the *Black* decision, Judge Kaplan of this district reached the opposite

13

conclusion. In *Parker v. Alexander*, the court held that the State Legislature "occupied the field" by enacting multiple statutes governing the revival of civil actions involving sexual offenses and that there is a direct conflict between the revival windows established under the GVA and the ASA. 779 F. Supp. 3d 361, 365–70 (S.D.N.Y. 2025). Plaintiff appealed. *Parker v. Alexander*, No. 25-487 (2d Cir.). Both the *Parker* and *Black* appeals were consolidated and are expected to resolve the preemption issue. *See Parker*, No. 25-487, ECF No. 19. Both appeals are fully briefed. *See id.* at ECF Nos. 23, 36, 38; *Black*, No. 25-564, ECF Nos. 55, 57, 67.

In *Rivers*, Judge Rakoff faced a similar preemption issue, noting that "courts in this District have stayed cases presenting related questions" pending a determination in the Second Circuit, citing *Doe v. Alexander*, 2025 WL 1384786, at \*2 (S.D.N.Y. Apr. 25, 2025), *Doe v. Daddy's House Recordings Inc.*, 2025 WL 1425732, at \*2 (S.D.N.Y. May 16, 2025), and *Doe v. Combs*, 2025 WL 1425751 (S.D.N.Y. May 16, 2025). *See* 2025 WL 2414117, at \*9. In *Rivers*, the court likewise stayed deciding the GMV claim until the Second Circuit rules in *Black* and *Parker*, concluding that the parties "'stand to benefit from gaining clarity on the scope of the [GMVPA]' to avoid "'risk[ing a] ruling at odds with the Second Circuit's decision and delaying resolution of the action further.'" *Id.* (citing *Doe*, 2025 WL 1384786, at \*1).

Based on all the above, to the extent this Court rules that Plaintiff alleged a viable "crime of violence" under the GMV—which Plaintiff's allegations fail to describe on their face—Defendant respectfully requests that this Court exercise its inherent power and stay any further proceedings in this action until the Second Circuit's decision on the pending appeals.

14

**POINT II**

**THE COMPLAINT ALLEGES IMMATERIAL,
SCANDALOUS, AND PREJUDICIAL MATERIAL THAT MUST BE STRUCK**

To the extent that any part of this action is sustained, the Complaint alleges extensive false and inherently prejudicial material having no relevance to Plaintiff's GMV claim that should be struck under Fed. R. Civ. P. 12(f). This material is not only defamatory, immaterial and scandalous; it was undoubtedly included to prejudice Defendant, while Plaintiff hides behind a qualified litigation privilege.

The Complaint makes multiple allegations regarding alleged sexual misconduct committed by Defendant against third parties. *See* Compl. ¶¶ 24, 30, 74. All such allegations must be struck as they are irrelevant to the GMV claim and are plainly inserted for the purpose of arousing and inflaming emotions and bias against Defendant. *See*, *e.g.*, *Bray v. Purple Eagle Ent., Inc*., 2019 WL 1549044, at *9 (S.D.N.Y. Jan. 18, 2019), *report and recommendation adopted*, 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) (striking "allegations regarding sexual misconduct, drug use and other similar behavior that are irrelevant to plaintiff's claims and inherently prejudicial"); *Prout v. Vladeck*, 326 F.R.D. 407, 410–11 (S.D.N.Y. 2018) (striking allegations that were "broad, *ad hominem* character attacks that do not assert any facts that can be litigated in this case"); *Donahue v. Asia TV USA Ltd*., 208 F. Supp. 3d 505, 517 (S.D.N.Y. 2016) (striking allegations of "sexual harassment of other employees" as "wholly unrelated to [plaintiff's] claims of national origin and age-based hostile work environment claims").

Furthermore, any allegation pertaining to Plaintiff's purported ouster from BBE thirty years ago (Compl. ¶¶ 38–41) has no conceivable purpose in the Complaint, as it is completely irrelevant to the GMV claim and barred under *res judicata*. In 2003, Plaintiff sued Defendant and others in federal court under the Racketeer Influenced and Corrupt Organizations Act and asserting

15

various state claims with respect to his alleged ouster from BBE. *See Burrowes v. Combs*, 312 F. Supp. 2d 449 (S.D.N.Y. 2004). By motion alone, all of Plaintiff's claims were dismissed. *Id.* at 452. The Second Circuit affirmed that dismissal. *See Burrowes v. Combs*, 124 Fed. App'x 70 (2d Cir. 2005). Thereafter, Plaintiff sued Defendant in New York Supreme Court, repeating many of the same patently false claims regarding his alleged ouster from BBE. While Defendant's motion to dismiss was initially denied, the Appellate Division reversed and dismissed the action. *See Burrowes v. Combs*, 25 A.D.3d 370 (1st Dep't 2006).

Plaintiff is barred from again asserting claims concerning his alleged BBE ouster because: (1) the federal and state actions involved an adjudication on the merits; (2) this action involves the same parties as those prior actions; and (3) claims predicated on the events purportedly alleged in the Complaint could have been raised in his prior lawsuits. *Alaimo v. Gen. Motors Corp.*, 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008). Therefore, none of the allegations pertaining to Plaintiff's alleged ouster from BBE have anything to do with any sexual misconduct claim.

Finally, Plaintiff alleges a stream of false and defamatory *per se* allegations that are unconnected to the alleged sexual assault claim(s) he purportedly suffered. He alleges the following: (1) Defendant allegedly "blacklist[ed]" Plaintiff from the music industry when he was representing singer Mary J. Blige (Compl. ¶¶ 42–49); (2) Defendant purportedly has a "history and propensity for violence" against persons other than Plaintiff (*id.* ¶¶ 65–74); (3) Defendant was purportedly involved in the murder of rapper Tupac Shakur (*id.* ¶¶ 75–107); and (4) Defendant purportedly "betray[ed]" rapper Christopher Wallace p/k/a The Notorious B.I.G. (*id.* ¶¶ 108–45). None of these matters have anything to do with Plaintiff's GMV claim, mandating that they be struck from the Complaint. *Bray*, 2019 WL 1549044, at *9; *Prout*, 326 F.R.D. at 410–11; *Donahue*, 208 F. Supp. 3d at 517.

16

## **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant the Motion to Dismiss, dismissing the Complaint, or alternatively, grant a stay of this action under its inherent powers pending the Second Circuit's decision in the consolidated *Black* and *Parker* appeals, together with such other and further relief as the Court deems just and proper.

Dated:   November 19, 2025
        New York, New York

                    Respectfully submitted,

                    JONATHAN D. DAVIS, P.C.

By:  */s/ Jonathan D. Davis*
     Jonathan D. Davis
     Colin J. Steelsmith
     David C. Russell
     1 Rockefeller Plaza
     Suite 1712
     New York, New York 10020
     (212) 687-5464
     jdd@jddavispc.com
     cjs@jddavispc.com
     dcr@jddavispc.com